1

2

3

4

UNITED STATES DISTRICT COURT

5        EASTERN DISTRICT OF WASHINGTON

6
TERRINA J. GILBERTS          )
7                             )   No. CV-10-0205-CI
            Plaintiff,        )
8                             )   ORDER DENYING PLAINTIFF'S
  v.                          )   MOTION FOR SUMMARY JUDGMENT
9                             )   AND GRANTING DEFENDANT'S
  MICHAEL J. ASTRUE, Commissioner )   MOTION FOR SUMMARY JUDGMENT
10 of Social Security,        )
                              )
11          Defendant.        )
                              )
12 _____

13     BEFORE THE COURT are cross-Motions for Summary Judgment (ECF

14 No. 12, 14.)  Attorney Lora Lee Stover represents Terrina Gilberts

15 (Plaintiff); Special Assistant United States Attorney Kathryn A.

16 Miller represents the Commissioner of Social Security (Defendant).

17 The parties have consented to proceed before a magistrate judge.

18 (ECF No. 6.)  After reviewing the administrative record and briefs

19 filed by the parties, the court **DENIES** Plaintiff's Motion for

20 Summary Judgment, and directs entry of judgment for Defendant.

21                          **JURISDICTION**

22     Plaintiff protectively filed for disability insurance benefits

23 (DIB) and Supplemental Security Income (SSI) on January 10, 2006.

24 (Tr. 137.)  She alleged disability due to heart disease, chronic

25 depression, and dizzy spells, with an onset date of July 15, 2004.

26 (Tr. 129.)  Her claim was denied initially and on reconsideration.

27 Plaintiff requested a hearing before an administrative law judge

28 (ALJ), which was held on March 18, 2008, before ALJ Hayward Reed.

(Tr. 20.) Plaintiff, who appeared with counsel, medical expert Robert Klein, Ph.D., and vocational expert Karen Black testified. (Tr. 20-79.) On May 16, 2008, the ALJ denied benefits; the Appeals Council denied review. (Tr. 7-19, 1-4.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the hearing, Plaintiff was 36 years old, unmarried, and living with her two sons, ages 13 and 15. (Tr. 40-41.) She reported she was able to do daily household chores, shopped daily, and prepared meals for her children. (Tr. 142-43.) She reported she had a high school education with special education classes and past relevant work as a bartender, cocktail waitress, prep and short order cook, clerk, warehouse worker and security guard. (Tr. 47, 130.) The VE testified that with the exception of prep cook and warehouse worker, Plaintiff's past work is classified as light work. (Tr. 67, 169.) Plaintiff stated she could no longer work because of passing out and dizzy spells. She also indicated she was nervous around people, suffered migraine headaches, used a nebulizer daily for asthma symptoms, and started having gastrointestinal problems two months before the ALJ hearing. (Tr. 42, 46, 53, 54-56.) She testified she was a binge drinker and would drink a couple times a month until she passed out, but she had quit drinking alcohol about one and half to two years ago. (Tr. 45-46.)

## ADMINISTRATIVE DECISION

ALJ Reed found Plaintiff met the insured status requirements

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 2

for DIB through March 31, 2008. (Tr. 12.) At step one, he found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 13.) At step two, noting Plaintiff's testimony that she was a binge drinker and would drink to the point of passing out, he found Plaintiff had the severe impairments of "adjustment disorder, panic disorder and substance addiction disorder." (Tr. 13-14.) At step two, the ALJ also noted medical evidence of mild tachycardia and syncope episodes stabilized with medication, as well as medical evaluations for heart disease, hypertension, elevated cholesterol, thyroid disease, and diabetes that revealed no significant abnormalities. He found Plaintiff's reported blackouts non-severe. (Tr. 13.) At step three, he found Plaintiff's impairments, including the substance use disorder, met the requirements of listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1 (Listings), Sections 12.04 and 12.06. (*Id.*)

Having found Plaintiff disabled with the effects of substance use, the ALJ proceeded to evaluate her impairments without the effects of alcohol use. At steps two and three, he found without the effects of substance use, she would continue to have severe mental impairments of depression and anxiety, but these impairments, alone or in combination, would not meet or medically equal a Listing. (Tr. 14-15.) At step four, the ALJ determined Plaintiff would have the residual functional capacity (RFC) to perform a full range of work at all exertional levels if she stopped the substance use. (Tr. 15.) He found if she stopped the alcohol use, non-exertional limitations caused by her impairments would limit her ability to work as follows:

[She can] frequently climb, balance, stoop, kneel, crouch, and crawl, but she should avoid hazardous machinery or heights, and climbing ropes, ladders, and scaffolds. She is also moderately limited in her ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, and accept instructions and respond appropriately to criticism from supervisors.

(Tr. 15.)

After discussing Plaintiff's testimony and symptom allegations, the ALJ determined Plaintiff was not credible to the extent her statements are inconsistent with the final RFC without substance addiction. (Tr. 16.) Considering Plaintiff's RFC and VE testimony, the ALJ found if Plaintiff stopped using alcohol, she could perform her past work as a cook, retail clerk, warehouse worker, and security guard. (Tr. 18.) He concluded Plaintiff's substance use is a "contributing factor material to disability"; therefore, Plaintiff has not been found "disabled" as defined by the Social Security Act through the date of the decision. (*Id*.)

### STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL EVALUATION PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). This burden is met once a claimant establishes that a medically determinable physical or mental impairment prevents him from engaging in his previous occupation.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

20 C.F.R. §§ 404.1520(a), 416.920(a). "This requires the presentation of 'complete and detailed objective medical reports of his condition from licensed medical processionals.'" *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999).

If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff argues the ALJ erred: (1) in finding substance use was a contributing factor to disability at all times relevant to her applications for benefits; (2) at step two when he failed to identify severe physical impairments supported by medical evidence; (3) in assessing her RFC; and (4) in posing an incomplete hypothetical to the VE. (ECF No. 13 at 9.) Plaintiff also contends the ALJ's credibility findings are not based on convincing evidence. (*Id*. at 15.)

**DISCUSSION**

**A.   Sequential Evaluation in the Context of Alcohol Addiction**

In 1996, the Contract with America Advancement Act (CAAA) amended the Social Security Act, providing that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Following these amendments, the Commissioner

promulgated regulations governing disability claims that involve substance abuse. 20 C.F.R. §§ 404.1535(a), 416.935(a).  Accordingly, an adjudicator in disability proceedings first must conduct the five-step inquiry without attempting to determine the impact of a substance abuse disorder.  If the ALJ finds that the claimant is not disabled under the five-step inquiry, the claimant is not entitled to benefits, and there is no need to proceed with further analysis. *Bustamante v. Massanari,* 262 F.3d 949, 955 (9th Cir. 2001).  If the ALJ finds the claimant disabled, and there is evidence of substance abuse, the ALJ should proceed under the sequential evaluation and §§ 404.1535 or 416.935 to determine if the claimant would still be disabled absent the substance abuse.  *Bustamante v. Massanari,* 262 F.3d 949, 955 (9th Cir. 2001).  If found disabled with the effects of substance abuse, the claimant has the burden in steps one through four of the second sequential evaluation process to prove drug or alcohol abuse is not a contributing factor material to his disability.  *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

As stated by the *Parra* court, "An alcoholic claimant who presents inconclusive evidence of materiality has no incentive to stop drinking, because abstinence may resolve his disabling limitations and cause his claim to be rejected or his benefits terminated."  *Id.* at 750.  Thus, through the CAAA, Congress seeks "to discourage alcohol and drug abuse, or at least not to encourage it with a permanent government subsidy."  *Id*. at 749; *Ball v. Massanari*, 254 F.3d at 817, 824 (9th Cir. 2001).  Therefore, a plaintiff must provide competent evidence of a period of abstinence and medical source opinions relating to that period sufficient to establish alcoholism is not a contributing factor material to

alleged impairments and disability. *Parra*, 481 F.3d at 748-49.

Plaintiff concedes she was a binge drinker and drank to the point of passing out, a fact supported by the record. (Tr. 44, 46.) She testified she "had stopped abusing alcohol after 2006." (ECF No. 13 at 12, Tr. 45.) She appears to argue that because there is no evidence of "ongoing addiction" after November 2006, the ALJ erred in finding her alcohol use was material to a finding of disability. The Commissioner's regulations and the legal standard governing cases in which there is evidence of substance addiction render this argument without merit.

As noted above, where there is evidence of substance addiction, the ALJ is required to conduct a first sequential evaluation with the effects of drug or alcohol addiction. Here, Plaintiff was found disabled, and there is evidence of alcoholism; therefore, a second sequential evaluation of Plaintiff's impairments without the effects of alcohol must be conducted. *Bustamante,* 262 F.3d at 955.

Plaintiff does not disagree that she was disabled with the effects of her alcohol abuse from the alleged onset date until at least November 2006. (ECF No. 13 at 12; Tr. 270.) Emergency room reports of acute intoxication and Plaintiff's own testimony support the ALJ's first sequential evaluation and determination that with the substance addiction disorder (12.09), Plaintiff met Listings 12.04 and 12.06. It is Plaintiff's burden to provide competent evidence of a period of abstinence sufficient to establish alcoholism is not a contributing factor material to alleged impairments and disability. *Parra*, 481 F.3d at 748-49. Plaintiff's allegation that her alcohol addiction did not continue appears to be based solely on Dr. Klein's conclusory statement that "there was no

diagnosis under Listing 12.09 after 2006." (ECF No. 13 at 12.)  A lack of diagnosis under 12.09 is inadequate to establish that Plaintiff was not using alcohol from November 2006, through the date of the decision.[1]  Even assuming she did stop using alcohol after November 2006, this fact does not alter the outcome of these proceedings.  As required by the regulations and case law, the ALJ conducted a second sequential evaluation in which he assumed Plaintiff had stopped using alcohol.  (Tr.  14-18.)

The ALJ properly made specific findings regarding Plaintiff's remaining impairments and ability to perform work activities without the effects of alcohol use during the period at issue, including that time during which Plaintiff claims "no ongoing addiction." Thus, the question before the court is whether the ALJ's findings in the sequential evaluation without the effects of alcohol abuse are supported by substantial evidence and free of legal error.

**B.   Credibility**

Plaintiff contends that symptoms identified in her testimony are caused by medically determinable impairments and, thus, support a finding of disability without the effects of alcohol.  She asserts the ALJ did not give "convincing rational" for rejecting her

---

[1]  For example, it is noted on review that new evidence submitted to the Appeals Council includes reports of renewed alcohol use in October 2008, five months after the denial of disability benefits. (Tr. 638.)  This new evidence calls into question the credibility of Plaintiff's statements that she had stopped using alcohol after the November 2006 episode.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

testimony that she suffered symptoms that would not allow her to sustain work. (ECF No. 13 at 15.) However, an adjudicator cannot be required to believe every allegation of disabling limitations, "or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423 (d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Further, the fact that a medically determinable condition exists does not automatically mean the symptoms are "severe," or "disabling" as defined by the Social Security regulations. *See, e.g., Edlund*, 253 F.3d at 1159-60; *Fair v. Bowen*, 885 F.2d 597, 602-03 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

Where, as here, the ALJ finds claimant's statements are not credible, he must make a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit claimant's allegations. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002); *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc). If there is no affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's symptom testimony. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ engages in a two-step analysis in deciding whether to admit a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Under the first step, the ALJ must find the claimant has produced objective medical evidence of an underlying "impairment," and that the impairment, or combination of impairments, could reasonably be expected to cause "some degree of

the symptom." *Lingenfelter*, 504 F.3d at 1036.  Once the first test is met, the ALJ must evaluate the credibility of the claimant.  As explained by the Commissioner in his policy ruling, the ALJ need not totally reject a claimant's statements; he may find the claimant's symptom testimony to be credible to a certain degree but "find only partially credible the individual's statements as to the extent of the functional limitations." *SSR* 96-7p. If a claimant's testimony is either rejected or discounted, the ALJ must give specific "clear and convincing reasons" for doing so, and his reasoning must be supported by the record. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ specifically identified Plaintiff's testimony he found unreliable and explained what evidence undermines the testimony. (Tr. 16-17.) *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  He noted inconsistencies between Plaintiff's statements and medical evidence that indicates her blackouts were related to alcohol use, hyperventilation or other non-neurological causes.  He also referenced objective medical evidence that her syncope episodes had decreased significantly.  (Tr. 16.) Inconsistency with the medical record is a legally sufficient basis for rejecting Plaintiff's subjective testimony. *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).

The record shows in February 2006, neurology specialist Alan Troupin, M.D., found no abnormalities or neurological disease to explain her syncope.  He opined her condition was related to anxiety attacks and recommended counseling.  (Tr. 181.) Emergency room reports documenting blackouts indicate Plaintiff was extremely

intoxicated when she presented at the hospital for treatment, and specifically noted she "has frequent visits for alcohol." (Tr. 44, 187, 199-200, 270, 434-35.)  As noted by the ALJ, there are no reports of treatment for black-outs in which alcohol intoxication was not present. (Tr. 44.)  In addition, the record includes results from objective diagnostic tests (including attempted induction of symptoms) and clinic notes from heart specialist Timothy Lessmeier, M.D., indicating no abnormal heart condition.  (Tr. 258, 274.)

Dr. Lessmeier reviewed diagnostic "tilt test" results and found "no clear evidence of neurocardiogenic syncope." (Tr. 258, 268.) In March 2005, an echocardiogram was interpreted as normal by cardiologist Michael Hostetler.  In his review of prior medical evaluations Dr. Hostetler noted no significant findings that would explain Plaintiff's symptoms. (Tr. 305-08.)  Readouts from a "loop recorder" implanted in March 2005 to detect syncope episodes showed only non-significant readings for the time Plaintiff wore the monitor, and on occasion, no evidence of self-reported episodes. (Tr. 274, 276-78, 283, 300, 306-07, 403, 513.)  The loop recorder was ex-planted in September 2007, at Plaintiff's request, within ten months of Plaintiff's self-reported abstinence from alcohol. (Tr. 525.)  Significantly, at the time the loop recorder was removed, Dr. Lessmeier concluded Plaintiff was "stable on medical therapy" and "asymptomatic," and the monitor was no longer needed. (Tr. 525, 545.) In January 2008, Plaintiff reported to Heart Clinics Northwest that she had "stable control of her symptoms for the last four months." (Tr. 534.)  These medical reports are inconsistent with Plaintiff's testimony that she had a heart condition that prevented

her from working.   The medical evidence amply supports the ALJ's credibility determination.   *SSR* 96-7p.

The ALJ also found Plaintiff's daily activities were not consistent with her allegations of disability.  (Tr. 16.)  This is a "clear and convincing" reason for discounting a claimant's allegations of disabling symptoms.  *Fair v. Bowen*, 885 F.2d 597, n.5 (9th Cir. 1989); *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The record in its entirety, as reviewed by the ALJ, shows Plaintiff takes care of her two adolescent sons, performs household chores, cooks, shops, and engages in home hobbies.  (Tr. 16, 140, 142, 143.)

Finally, the ALJ referenced Plaintiff's testimony that she had stopped drinking two years ago, although the record includes an emergency room report of drinking to the point of unconsciousness in November 2006. (Tr. 16.)  The record also indicates during the alleged period of disablilty, Plaintiff was inconsistent in her report of alcohol use to medical providers.[2] (Tr. 303, 359, 475.) These examples of Plaintiff's lack of candor about alcohol use support an adverse credibility finding.  *Verduzco v. Apfel,* 188 F.3d 1087, 1090 (9th Cir. 1999).  The ALJ credibility determination is supported by substantial evidence and free of legal error.  *Burch v. Barnhart*, 400 F.3d 676, 680-81; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

---

[2]  The record documents emergency room treatment for alcohol related episodes on the following dates: January 14, 2006; March 4, 2006, March 18, 2006, April 22, 2006, and November 30, 2006.  (Tr. 434, 199, 194, 183, 270.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

**C.   Physical Impairments**

Plaintiff argues that the ALJ ignored limitations from the physical impairments of chest pains, asthma, obesity, syncope, tachycardia, dizziness, and migraines. (ECF No. 13 at 13.) She contends his failure to give reasons for ignoring this evidence is error, and his determination that she can perform work at all exertional levels[3] is reversible error. (*Id*. at 12-14.)

As discussed above, the ALJ credited evidence which includes treating heart specialist Dr. Lessmeier and examining neurologist Allan Troupin, M.D. As found by the ALJ, neither Dr. Troupin nor Dr. Lessmeier could identify a medical reason her reported syncope and dizziness other than hyperventilation or alcohol use. (Tr. 16, 300, 305-06.) Dr. Troupin examined Plaintiff in February 2006, when Plaintiff was drinking alcohol to inebriation. (Tr. 181-82, 199, 433.) He reported extensive cardiac evaluations in the past revealed no evidence of arrhythmia or cardiac events to explain Plaintiff's episodes. Upon exam, Dr. Troupin found no medical evidence of neurological disease to explain her symptoms. Based on Plaintiff's self-reported symptoms, Dr. Troupin attributed her self-

---

[3] A claimant's exertional level defines the individual's capacity "to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p. Nonexertional capacity relates to "limitations and restrictions that do not depend on an individual's physical strength." *Id*. Physical non-exertional limitations include postural, manipulative, visual, and communicative limitations, as well as environmental factors. *Id*.

reported "dizziness" and "blackouts" to anxiety attacks with hyperventilation symptoms. (Tr. 181.)

During the period Dr. Lessmeier treated Plaintiff, he noted no significant readings on a surgically implanted loop recorder that would explain Plaintiff's self-reported syncope. (Tr. 305.) The record also shows that by December 2006, Plaintiff reported no syncope or palpitatons. (Tr. 284.) Plaintiff's recorded tachycardia symptoms were improving with prescribed medication. (Tr. 283.) Dr. Lessmeier opined Plaintiff was stable and asymptomatic by September 2007, when she had her loop recorder removed. (Tr. 545.) In response to the ALJ's questioning, Plaintiff conceded she was stable on medication at the time the loop recorder was removed. (Tr. 63.) Thus, medical evidence does not support a finding of heart disease or neurological disease. Substantial evidence supports the ALJ's finding that without the effects of alcohol, Plaintiff did not have more than minimal limitations due to syncope, tachycardia, or dizziness.

Nonetheless, Plaintiff's self-reported dizziness was accepted to some degree by the ALJ, as reflected in the final RFC determination. The ALJ specifically found Plaintiff should avoid hazardous machinery, heights, and climbing ropes, ladders and scaffolds. (Tr. 15.) These postural limitations due to Plaintiff's dizzy spells do not decrease her abilities to carry, lift, sit/stand or walk with normal breaks, push and/or pull. The ALJ's finding that Plaintiff could perform work at all exertional levels is supported by substantial evidence.

Plaintiff fails to identify specific medical evidence in the

record to support her assertion that obesity, asthma, migraines, and chest pain were severe or caused work-related limitations. 20 C.F.R. §§ 404.1520(c); 416.920(c); *see also Carmickle v. Commissioner*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008)(review court declined to address issues not argued with specificity in appellant's brief). The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe," or "disabling" as defined by the Social Security regulations. *See, e.g., Edlund*, 253 F.3d at 1159-60; *Fair*, 885 F.2d at 603; *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). Medical evidence must show that a diagnosed condition (1) causes functional limitations that have more than a minimal effect on Plaintiff's ability to do work activities, and (2) last more than 12 months. 20 C.F.R. §§ 404.1509, 416.909; *SSR* 96-3p. Here, providers make no specific mention of limitations or significant problems caused by excess weight, asthma, chest pain, or migraines. Plaintiff's subjective complaints alone cannot be the basis for a finding of a severe impairment or disability. *Key v. Heckler*, 754 F.2d 1545, 1549-50; *SSR* 96-7p. Independent review of the medical records from Group Health indicate a prescribed medication regime decreased Plaintiff's migraine and asthma symptoms. (Tr. 597-99.) As reported by Plaintiff in October and November 2007, her medications were working well, (Tr. 597), and she testified she did not experience medication side effects. (Tr. 34, 56.) "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Commissioner of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir.

2006)(citations omitted).

Plaintiff has not met her burden under step two or step four to show that obesity, asthma, migraines, or chest pain, without the effects of alcohol, caused more than minimal limitations in her work-related abilities.

**D.   Hypothetical Question and RFC Determination**

During the hearing, the ALJ posed five hypothetical questions to the VE to determine if Plaintiff could her perform past relevant work.[4]   (Tr. 68-72.)   Plaintiff argues the ALJ failed to include mental limitations assessed by non-examining medical expert Ronald Klein, Ph.D.[5] (ECF No. 13 at 12, 14; Tr. 616-17.)   This argument is without merit.

A review of the record shows Dr. Klein opined Plaintiff would have moderate difficulties, without the effects of alcohol, in her ability to maintain attention and concentration for extended periods (for emotional reasons); perform activities within a schedule, maintain regular attendance and be punctual; accept instructions and

_____

[4]  Based on her review of the record and Plaintiff's testimony the VE identified Plaintiff's past relevant work as: bartender cocktail waitress; prep cook; short order cook; clerk-retail books; clerk-inventory supervisor; warehouse worker; and security guard. (Tr. 169, 64-67.)

[5] Without referencing the record, Plaintiff states Dr. Klein "commented that medications could affect her cognitively." (ECF No. 13 at 13.)   However, as mentioned above, the evidence in its entirety indicates her medications were working well and she did not experience side effects.  (Tr. 34, 56.)

respond appropriately to criticism from supervisors.  He also noted "anxiety symptoms would distract her periodically." (Tr. 616-17.) In his fourth hypothetical individual, the ALJ specifically included the mental limitations identified by Dr. Klein.  (Tr. 72.)  The VE testified this individual would be able to perform Plaintiff's past relevant work, with the exception of inventory clerk with supervisory duties.  (*Id.*)

The ALJ's final RFC substantially reflects the mental limitations assessed by Dr. Klein. (Tr. 15.)  As stated in the regulations governing these proceedings, the RFC determination represents the most a claimant can still do despite her physical and mental limitations.  20 C.F.R. §§ 404.1545, 416.945.  The RFC assessment is not a "medical issue" under the Regulations; it is based on all relevant evidence in the record, not just medical evidence.  *Id.*  Further, the Supreme Court has held explicitly that the ALJ is "responsible for determining credibility, resolving conflicts in medical testimony and for resolving ambiguities," in these proceedings. *Richardson,* 402 U.S. at 400; *Andrews,* 53 F.3d at 1039; *SSR* 96-8p.  The final determination regarding a claimant's ability to perform basic work is the sole responsibility of the Commissioner.  20 C.F.R. § 416.946; *SSR* 96-5p (RFC assessment is an administrative finding of fact reserved to the Commissioner).  No special significance is to be given to a medical source opinion on issues reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e), 416.927(e).  Where, as here, ALJ's determination is a rational interpretation of the evidence, the court may not substitute its judgment for that of the Commissioner.  *Tackett,* 180 F.3d at 1097.

Because the RFC reasonably reflects all limitations supported by the evidence, including Dr. Klein's testimony and Plaintiff's credible testimony, the Commissioner's final RFC and step four findings that Plaintiff can perform the identified past relevant work are affirmed.

<b>CONCLUSION</b>

The Commissioner's denial of benefits is supported by substantial evidence and without legal error. Plaintiff did not meet her burden of proving that she is disabled absent the effects of alcohol use. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(ECF No. 12)** is **DENIED;**

2. Defendant's Motion for Summary Judgment **(ECF No. 14)** is **GRANTED;**

3. Judgment shall be entered for Defendant.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant and the file shall be **CLOSED.**

DATED November 14, 2011.


                    S/ CYNTHIA IMBROGNO
            UNITED STATES MAGISTRATE JUDGE

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19